UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| In Re: | |
|---|---|
| MARK D. CHRISTENSEN and SARAH A. CHRISTENSEN, | Bankruptcy Case No. 21-40477-JMM |
| Debtors. | |

MEMORANDUM OF DECISION

**Appearances:**

Kameron M. Youngblood, Idaho Falls, Idaho, former attorney for debtors.

Andrew S. Jorgensen and Jason R. Naess, Boise, Idaho, attorney for the United States Trustee.

Heidi Buck Morrison, Pocatello, Idaho, attorney for trustees Gary Rainsdon and Sam Hopkins.

*Introduction*

Debtors Mark D. Christensen and Sarah A. Christensen ("Debtors") filed a chapter 7[1] bankruptcy petition on August 11, 2021. Doc. No. 1.[2] In doing so, they were

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] The docket in this case was not made a part of the Court's record. Nevertheless, the Court may take judicial notice of its own docket and will do so in this case. *In re Parkinson Seed Farm, Inc.*, ___ B.R. ___, No. AP 20-08039-JMM, 2022 WL 532731, at *1 (Bankr. D. Idaho Feb. 18, 2022) (citing *Hillen v. Specialized Loan Servicing, LLC (In re Leatham)*, 2017 WL 3704512, *2 (Bankr. D. Idaho Aug. 24, 2017)) ("Pursuant to Federal Rule of Evidence 201, this Court, on its own, can take judicial notice of information that is generally known within its jurisdiction or can accurately be determined from sources

MEMORANDUM OF DECISION — 1

represented by attorney Kameron M. Youngblood ("Youngblood"). Upon finding a number of concerning issues with how Youngblood was handling his cases, the United States Trustee ("UST") filed a motion for sanctions in this and over 50 other cases, of which 44 were assigned to this Court. Doc. No. 36. The Court conducted a hearing on the motions on November 18, 2021, after which it permitted supplemental briefing. Following the briefing, the motions were deemed under advisement.

After considering the record, submissions, and arguments of the parties, as well as applicable law, this decision resolves the motion. Fed. R. Bankr. P. 7052; 9014.

### *The Sanctions Motion*

In the motion in this case, the UST alleges a single basis for the imposition of sanctions, namely, violations of Rule 1007 and the Idaho Rules of Professional Conduct. Additionally, with regard to the sanctions motions filed in each of the separate cases, when considered as a whole, the UST alleges a pattern and practice of violations under § 526. As a result, the UST seeks the following monetary and non-monetary remedies:

1. Cancelling or voiding any contract or agreement between the Debtors and Youngblood under § 329;

2. Disgorging the fees Debtors paid to Youngblood under § 329;

3. Injunctive relief under § 526(c)(5) and the Court's inherent powers, specifically:
    a. Suspending Youngblood's practice in front of the Court until the Court is satisfied the concerns identified have been corrected;
    b. If Youngblood is allowed to practice in front of the Court again, requiring him to file a "status report" signed by the client and Youngblood in each case where he appears as counsel, attesting that:
        i. Youngblood personally met and reviewed the Petition, Schedules,

---

whose accuracy cannot be reasonably be questioned. That includes taking notice of its own docket in the underlying case.")

MEMORANDUM OF DECISION — 2

       Statement of Financial Affairs, and other documents with the client prior to filing;

   ii.  The client's questions have been answered regarding the Petition, Schedules, Statement of Financial Affairs, and other documents, and the information included therein, and the client is satisfied he or she is receiving adequate representation from Youngblood; and

   iii.  The client provided Youngblood a copy of the wet signatures for the Petition, Schedules, SOFA, and other documents filed in the case. The requirement to file such a report should continue until the Court is satisfied it is no longer necessary.

4. Imposing a civil penalty under § 526(c)(5)(B) against Youngblood to deter him from making untrue and misleading statements and misrepresentations in the future, as a result of his intentional violations, and pattern and practice of violating, §§ 526(a)(1), (a)(2), and (a)(3).

Doc. No. 36. The Court will discuss each of the allegations and sanctions sought.

### Applicable Law, Analysis, and Disposition

1. <u>Section 521, Rule 1007, and the Professional Rules</u>

    *A. Section 521 and Rule 1007*

    Because a debtor's finances are typically private, the Court, creditors, the trustee, and UST all rely on the documents filed in the bankruptcy case for information about them. As such, the Code, Rules, and local rules contain requirements and a timeline for filing necessary documents. Section 521 describes a debtor's duties, including what documents must be filed. Specifically, § 521(a)(1) requires a debtor to file certain schedules, a Statement of Financial Affairs ("SOFA"), and copies of payment advices. Rule 1007(b) lists the documents a debtor is required to file, and subsection (c) of that Rule provides the deadlines for doing so. Of particular relevance here, a debtor must file schedules and the SOFA within fourteen days of filing the petition. Rule 1007(c). The Rule further allows for an extension of this time "only on motion for cause shown and on

MEMORANDUM OF DECISION — 3

notice to the [UST]…." *Id*. Local Rule 1007.2 further limits extensions of time for filing required documents, providing that any extension given under Rule 1007(c):

> will not be granted beyond the date set for the meeting of creditors under § 341(a) unless a judge orders otherwise for cause shown. Any motion for extension of time filed under this rule shall (a) state the date of extension requested and (b) identify the date currently set for the § 341(a) meeting or, alternatively, affirmatively allege that no such date has yet been set. An extension beyond the date set for the § 341(a) meeting will not be granted unless the debtor has also been granted a continuance of the § 341(a) meeting, pursuant to LBR 2003.1, and the confirmation hearing if applicable, and provided appropriate notice thereof.

Finally, in order to put some teeth into the debtor's duty to file the required documents, § 521(i) provides that "if an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under [§ 521(a)] with 45 days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition."

In this case, the Debtors filed only a bankruptcy petition on August 11, 2021; the meeting of creditors was scheduled for September 22, 2021. Doc. Nos. 1 & 15. The deadline to file all other required documents was August 25, 2021. Doc. No. 11. An amended petition was filed on August 18, 2021. Doc. No. 14.

On September 3, 2021, nine days after the required documents were required to be filed but had not, and no extension had been sought, the UST filed a motion to dismiss the case for failure to file the required documents. Doc. No. 18. Two more weeks passed, and Debtors opted to engage different counsel. On September 17, 2021, a Notice of Termination of Counsel and Designation of New Counsel was filed by Michael Wilder, Debtor's new counsel. Ex. 396. Mr. Wilder filed the required documents a few

MEMORANDUM OF DECISION — 4

days later, the UST's motion to dismiss was withdrawn, and the case got back on track.

The UST contends these violations of § 521 and Rule 1007 demonstrate a violation of the Professional Rules regarding an attorney's diligence and communication. The Court agrees.

### B. Rules of Professional Conduct

The Idaho Rules of Professional Conduct apply to attorneys practicing before this Court. Local Bankruptcy Rule 9010.1(g) provides that the "members of the bar of this court shall adhere to the Rules of Professional Conduct promulgated and adopted by the Supreme Court of the State of Idaho."). *In re Grimmett*, No. BR 16-01094-JDP, 2017 WL 2437231, at *5 (Bankr. D. Idaho Jun. 5, 2017), *aff'd* No. 1:17-cv-00266-EJL (D. Idaho Feb. 16, 2018). The Court will examine some of those rules in its decision.

The scope of the Professional Rules provides guidance to the Court:

> Some of the Rules are imperatives; cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the Rules in which the lawyer has discretion to exercise professional judgment. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion. Other Rules define the nature of relationships between the lawyer and others. The Rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role. Many of the Comments use the term "should." Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules.

Idaho Rule of Professional Conduct "Scope."

#### i. Idaho Rule of Professional Conduct 1.3

Idaho Rule of Professional Conduct 1.3 provides that a lawyer "shall act with reasonable diligence and promptness in representing a client." A portion of paragraph 3

MEMORANDUM OF DECISION — 5

of the Commentary to this rule is worth repeating here:

> Perhaps no professional shortcoming is more widely resented than procrastination.  A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed.  Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness.

Youngblood demonstrated a lack of diligence in Debtors' case.  He failed to file the required documents in a timely manner such that the UST moved to dismiss the case. This caused Debtors to have to seek other counsel in order to preserve their case.

### ii.  Idaho Rule of Professional Conduct 1.4

Turning to the communication between attorney and client, Idaho Rule of Professional Conduct 1.4 provides that a lawyer shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
> (3) keep the client reasonably informed about the status of the matter;
> (4) promptly comply with reasonable requests for information; including a request for an accounting as required by Rule 1.5(f); and
> (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

The UST in his motion states that it attempted to contact Youngblood after the Debtors contacted the UST in response to the motion to dismiss, but Youngblood never attempted to contact the UST about the matter.  The Court cannot consider the allegations in a motion to be evidence and will not do so here.  The only evidence demonstrating a lack of communication is in exhibit 396, wherein Mr. Wilder stated that "Debtor has [sic]

MEMORANDUM OF DECISION — 6

attempted to contact Mr. Youngblood concerning their case but has received no communication from his office."

Because the record before the Court does not demonstrate any lack of communication between the Debtors and Youngblood, the Court does not find a violation of Idaho Rule of Professional Conduct 1.4.

2. Sanctions

Because the record clearly establishes that Youngblood did not meet the requirements of Rule 1007 and § 521 and that he violated Idaho Rule of Professional Conduct 1.3, the Court concludes that injunctive relief under both § 526 and its inherent powers is appropriate here.

   A. *"Pattern and Practice" of Violations Under § 526*

Section 526 of the Code provides restrictions on "debt relief agencies." It provides, in pertinent part:

> (a) A debt relief agency shall not--
>> (1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;
>> (2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;
>> (3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—
>>> (A) the services that such agency will provide to such person; or
>>> (B) the benefits and risks that may result if such person becomes a debtor in a case under this title;

MEMORANDUM OF DECISION — 7

\* \* \* \* \*

(c)(5) Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal or State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may--
    (A) enjoin the violation of such section; or
    (B) impose an appropriate civil penalty against such person.

A bankruptcy attorney is a debt relief agency. *See* § 101(12A) (defining "debt relief agency" as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration"); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 232, 130 S. Ct. 1324, 1329, 176 L. Ed. 2d 79 (2010) (holding that a bankruptcy attorney falls within the definition of a "debt relief agency.") The Code also defines "assisted person" as "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $204,425.[3] Youngblood qualifies as a debt relief agency for each of the cases before this Court in which the sanctions motion was filed, as each of the debtors checked the box indicating his or her debts consisted of primarily consumer debts, and the value of their nonexempt property was less than $204,425.

As the statute above indicates, if a debt relief agency represents to an assisted person that it will provide certain services in connection with a bankruptcy case, and then fails to perform those services, the debt relief agency has violated § 526(a)(1). Moreover,

---

[3] This figure was originally $150,000, and was adjusted to $204,425 effective April 1, 2019. The amount increased recently to $226,850, effective April 1, 2022. All cases at issue here were filed when the amount was $204,425.

MEMORANDUM OF DECISION — 8

§ 526(a)(2) is violated if a debt relief agency makes, or counsels or advises any assisted person to make, a statement in a document that is filed with the court, that is untrue or misleading, or using reasonable care should have been known to be untrue or misleading. Finally, if a debt relief agency misrepresents the services that it will provide to an assisted person or the benefits and risks that may result if such person files a bankruptcy petition, then § 526(a)(3) may have been violated.

Moreover, if the violations of § 526 are determined to be intentional, or if a clear and consistent pattern or practice of violating § 526 is found, the statute permits the court to enjoin the violation and impose a civil penalty against the attorney. § 526(c)(5). The UST argues that it has demonstrated a pattern and practice of violations of § 526 and has asked for both an injunction and the imposition of a civil penalty in this case.

The Court finds that a clear and consistent pattern and practice of violating § 526 has been demonstrated. Recall, if Youngblood, as a debt relief agency, made an untrue or misleading statement in a document that is filed with the court, § 526(a)(2) has been violated. Moreover, if Youngblood, as a debt relief agency, failed to perform any service that he informed the debtor he would provide in connection with the case, such is likewise a violation of § 526(a)(1). Of the forty-four cases assigned to this Court in which the UST filed the sanctions motion, this Court has determined the following:

| | |
|---|---|
| Violation of Rule 1007 and § 521: | 20 cases |
| 2016(b) disclosure was misleading: | 31 cases |
| 2016(b) disclosure was inconsistent: | 31 cases |
| Conflict of interest in fee agreement: | 23 cases |

MEMORANDUM OF DECISION — 9

The UST has established a clear pattern and practice of violating § 526.  *See In re Hanawahine*, 577 B.R. 573, 580 (Bankr. D. Haw. 2017) (a pattern and practice was established by the fact that bankruptcy courts in three other jurisdictions had sanctioned the bankruptcy firm and/or its principal for abandoning debtors, and a motion was pending in a fourth jurisdiction.)  Such violation exposes Youngblood to both injunctive and civil penalties.

B.  The Court's Inherent Powers

The Supreme Court has made it clear that an Article III federal court has the inherent power "to control admission to this bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991).  The Ninth Circuit recognizes that bankruptcy courts also "have the inherent power to sanction that *Chambers* recognized exists within Article III courts." *Caldwell v. Unified Cap. Corp.* (*In re Rainbow Mag., Inc.*), 77 F.3d 278, 284 (9th Cir. 1996); *see also In re Aleman*, No. 14-00606-TLM, 2015 WL 1956271, at *1–2 (Bankr. D. Idaho Apr. 29, 2015); *In re Hurd,* 2010 WL 3190752, at *2 (Bankr. D. Idaho Aug. 11, 2010) ("A bankruptcy court has the authority to regulate the practice of lawyers who appear before it.  Such authority stems from the court's inherent powers, the Code and the Rules."); *Gardner v. Law Office of Lyndon B. Steimel (In re Valentine),* 2014 WL 1347229, at * 3 (Bankr. D. Idaho Apr. 3, 2014) ("The BAP recognized that, under Ninth Circuit precedent, the bankruptcy courts have the power to sanction under their civil contempt authority under § 105(a) and under their inherent sanction authority." (internal quotations omitted)).

MEMORANDUM OF DECISION — 10

These inherent powers are not without limits, however. "Because of their potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Thus, like the bankruptcy court's civil contempt authority, inherent sanction authority "does not authorize significant punitive damages." *Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1197 (9th Cir. 2003) (noting that the Ninth Circuit has "refrained from authorizing a punitive damage award under the bankruptcy court's inherent sanction authority"). "Civil penalties must either be compensatory or designed to coerce compliance." *Dyer,* 322 F.2d at 1192 (citing *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1137–38 (9th Cir. 2001)).

When there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power. *Chambers*, 501 U.S. at 50.

C. Injunctive Relief Sought

Initially, the Court notes that it is possible Youngblood no longer intends to practice law. He indicated at the hearing on this motion that he was unable to represent the Debtor and asked to withdraw from the cases in which the sanctions motions had been filed. Moreover, since the hearing, the Court has been informed that Youngblood has not paid his annual bar dues, and on March 14, 2022, the Idaho Bar Association suspended him from the practice of law. As a result, this Court issued a reciprocal notice of suspension and turned off Youngblood's electronic filing privileges. Nevertheless,

MEMORANDUM OF DECISION — 11

operating on the assumption that Youngblood will one day return to practicing law, the Court will consider the UST's request for injunctive sanctions.

In the motion, the UST seeks several forms of injunctive relief.  The Court will consider each.  First, the UST requests suspension of Youngblood's practice before this Court until the Court is satisfied that the issues raised in the pending motion have been corrected.  At present this is moot, as Youngblood currently has no filing privileges.

Next, the UST seeks to require Youngblood to file a "status report" or other document with the Court in each case where he appears as counsel, for as long as the Court deems necessary.  This report is intended to provide guard rails to channel Youngblood's practice to conform with the Code, Rules, and Idaho Rules of Professional Conduct.  Specifically, the UST envisions this report to include what is essentially an affidavit of the debtor bearing a wet signature as well as a certification by Youngblood indicating:

> 1)  that Youngblood personally met and reviewed the Petition, Schedules, Statement of Financial Affairs, and other documents with the debtor prior to filing;
>
> 2)  that the debtor has had his or her questions answered and is satisfied with Youngblood's representation; and
>
> 3)  that the debtor has provided, and Youngblood will retain, copies of the wet signatures filed in the case.

The Court concludes most of these provisions are appropriate.  The requirement to retain the debtors' wet signatures in all cases not only complies with what is required of an attorney filing electronically, but will ensure Youngblood obtains and files wet signatures for the debtors in their respective cases.  Moreover, a statement from both

MEMORANDUM OF DECISION — 12

Youngblood and his clients that Youngblood has met with the client and reviewed all important documents prior to filing will serve to align his new practice with his legal and ethical obligations.

Next, while the UST's request for a statement from the debtor that his or her questions have been answered and he or she is satisfied with Youngblood's representation is well-meaning, the Court does not find it appropriate. Instead, the Court will order that the client provide a statement that he or she has had a reasonable opportunity to converse with Youngblood and to ask questions, and that Youngblood has responded to those questions. The Court will not require that every client be "satisfied" with Youngblood's representation, however. The Court understands that client satisfaction is dependent on many different factors, and that counsel may be doing an excellent job and complying with all statutes, Rules, and ethical obligations, yet the client could remain unsatisfied for some reason. Thus, the Court will not order this relief.

### D. Civil Penalty

Finally, the UST asks that the Court impose a civil penalty pursuant to § 526(c)(5)(B)[4] to deter him from making untrue and misleading statements and representations in the future. While § 526(c)(5)(B) permits the imposition of a civil penalty where a pattern and practice of violations has occurred, the Court declines the UST's invitation here.

---

[4] This statute provides, "if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may … (B) impose an appropriate civil penalty against such person."

MEMORANDUM OF DECISION — 13

A civil penalty must be appropriate in amount and intended to deter violative conduct in the future. *In re Hanawahine*, 577 B.R. at 580 (citing *In re Huffman*, 505 B.R. 726, 766 (Bankr. S.D. Miss. 2014)); *In re Dellutri L. Grp.*, 482 B.R. 642, 653–54 (Bankr. M.D. Fla. 2012) (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S. Ct. 497, 499, 93 L. Ed. 599 (1949) (a civil sanction is "remedial in nature and intended to enforce compliance.")). While the UST has established a clear and consistent pattern of violations on Youngblood's part, the Court finds a civil penalty unnecessary as a deterrent. By this decision and the corresponding order, the Court will require significant record keeping and reporting requirements in future cases. These measures are designed to curtail Youngblood's cavalier approach to the practice of law and ensure that his future practice conforms to applicable statutes, Rules, and ethical responsibilities. As such, an additional deterrent in the form of a civil penalty is unwarranted here.

### *Conclusion*

Finding merit in some of the allegations raised in the UST's motion for sanctions, the Court will impose injunctive relief as follows: should Youngblood return to the practice of law, he will have to obtain, file, and retain each debtor's wet signatures in accordance with the requirements of the Code, Rules, Local Rules, and the Court's ECF Procedures; he will have to file a statement bearing a wet signature from the client, attesting that Youngblood has met with the client and reviewed all important documents prior to filing; and finally, that the client has had a reasonable opportunity to converse with Youngblood and to ask questions, and that Youngblood has responded to those

MEMORANDUM OF DECISION — 14

questions. The Court will not impose a civil penalty in this case.

A separate order will be entered.



DATED: May 4, 2022

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION — 15